**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANCISCO WAYNE | : | 1:14-cv-1893 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| KAMIONKA ENTERTAINMENT | : | |
| GROUP and MULLIGAN'S | : | |
| DOWNTOWN PUB, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**June 16, 2016**

Presently before this Court is a Motion for Summary Judgment (Doc. 24) filed by Defendants Kamionka Entertainment Group and Hospitality Partners 1, LLC d/b/a Mulligan's Downtown Pub ("Mulligan's"). Plaintiff Francisco Wayne ("Mr. Wayne") filed a Complaint (Doc. 1) in this matter on September 30, 2014, asserting claims of racial discrimination, racial harassment and retaliation in violation of 42 U.S.C. § 1981. For the reasons that follow, the Motion for Summary Judgment shall be granted in full.

**I.    FACTUAL BACKGROUND**

**A.    Mulligan's Pub**

Mulligan's is a pub located at 17 North Second Street, in Harrisburg, Pennsylvania. (Doc. 25, ¶ 2). Ronald Kamionka ("Mr. Kamionka") was and has

been, at all relevant times, either the managing member (*id.*, ¶ 4) or owner of Mulligan's.  (Doc. 1, ¶ 15).  For all times relevant to the above-captioned matter, Jesse Paine ("Mr. Paine") was the manager at Mulligan's, (*id.*, ¶ 16), though he has since either been terminated (Doc. 28-5, pp. 149-50, 11:16-12:18) or resigned. (Doc. 27, p. 238, 65:13-21).

On or around June 21, 2014, Mr. Paine interviewed and hired the Plaintiff, Mr. Wayne, as a bartender at Mulligan's.  (*Id.*, ¶ 18; Doc. 25, ¶ 15).  Upon his hiring, Mr. Wayne alleges that he was the only African American bartender employed by either of the Defendants, though African Americans were employed as security guards or as kitchen staff at Mulligan's.  (Doc. 1, ¶¶ 20-21). Defendants dispute this fact.  (Doc. 29, p. 8).

Mr. Kamionka was not present for Mr. Wayne's hiring.  Mr. Wayne alleges that upon meeting Mr. Wayne and learning that he had been hired as a bartender, Mr. Kamionka became visibly upset.  (*Id.*, ¶ 22).  Thereafter, Mr. Wayne alleges that he was subjected to a racially hostile work environment due to Mr. Kamionka's behavior.  (*Id.*, ¶ 23).  Such behavior included, but was not limited to: (1) Mr. Kamionka openly using the term "nigger" when referring to African American employees; (2) Mr. Kamionka not wanting "any niggers touching the money, because it's in their blood to steal;" (3) Mr. Kamionka stating that "the day minorities rise up and have equal rights is the day I leave this country;" and (4) Mr.

Kamionka repeatedly demanding that Mr. Wayne empty his pockets during work while accusing him of stealing, but upon seeing that Mr. Wayne had no stolen items in his pockets, Mr. Kamionka would become frustrated and yell at Mr. Wayne to get back to work.  (*Id.*, ¶ 23-24).  In his deposition testimony, Mr. Wayne clarifies that only once did Mr. Kamionka actually accuse him of stealing, and that this was inaccurately depicted as multiple times in the Complaint.

In his Complaint, Mr. Wayne also alleges that he complained to Mr. Kamionka and Mr. Paine about the above-described racist comments and actions, but Mr. Kamionka's behavior did not cease.  (Doc. 1, ¶¶ 25-26).  Again, however, in his deposition testimony, Mr. Wayne admits that he never actually made such complaints and that this too was an inaccuracy in the Complaint.  (Doc. 25, ¶ 32; Doc. 28-5, pp. 39:9-15, 40:4-7, 46: 20-24).

Again, Defendants heartily dispute Mr. Wayne's allegations. They assert that Mr. Kamionka never made any of the racist comments described, and that Mr. Kamionka never even had a conversation with Mr. Wayne prior to Mr. Wayne's last day of work at Mulligan's.  (Doc. 25, ¶¶ 17, 19-34).  However, Defendants agree that, on that day, Mr. Kamionka did indeed accuse Mr. Wayne of theft. Defendants allege that, on or about July 21, 2014, Mr. Kamionka observed Mr. Wayne approach the cash register at Mulligan's as though he were making a sale. (*Id.*, ¶ 21).  Mr. Kamionka alleges he witnessed Mr. Wayne place something from

3

the cash register into his front pants pocket, so Mr. Kamionka told Mr. Paine to bring Mr. Wayne to the rear of the facility.  (*Id*., ¶¶ 23-24).  Once there, Mr. Kamionka instructed Mr. Wayne to empty his pockets, but they did not contain any cash. (*Id*., ¶ 26).  Mr. Kamionka suspected that Mr. Paine had informed Mr. Wayne that he was suspected of stealing, and so Mr. Wayne had emptied his pockets on the way to the rear of Mulligan's.  (*Id*., ¶ 29).  Due to these suspicions, Mr. Kamionka instructed Mr. Paine to fire Mr. Wayne.  (*Id*., ¶ 30).

Mr. Wayne alleges that he did not steal anything, and that this accusation was merely a pretext for firing him. Mr. Wayne further alleges that in reality he was fired because of his race.  (Doc. 1, ¶¶ 31-33).

### B.   Kamionka Entertainment Group

Kamionka Entertainment Group is a limited liability company in Mechanicsburg, Pennsylvania.  (Doc. 25, ¶ 6).  According to the facts as alleged by Kamionka Entertainment Group, the sole purpose of Kamionka Entertainment Group is to provide consulting services to clients.  (*Id*., ¶ 7).  Mr. Kamionka is the owner and sole employee of Kamionka Entertainment Group.  (*Id*., ¶¶ 8-9).  Mr. Kamionka alleges that Kamionka Entertainment Group neither exercises any operational or business control over, nor provides consulting services to, Mulligan's Pub.  (*Id*., ¶¶ 10-11).

Contrary to the statements above, Mr. Wayne alleges that Kamionka Entertainment Group is involved in the process of employing, and/or jointly employs individuals to work at Mulligan's.  (Doc. 28-3, ¶ 3).  In support of this assertion, Mr. Wayne submits Mr. Paine's workers' compensation form, in which Mr. Paine indicates that he is employed by the Kamionka Entertainment Group. (Doc. 27, Ex. "E").  Mr. Wayne also submits a request for a criminal record check of Mr. Wayne, submitted to the Pennsylvania State Police by Kamionka Entertainment Group.  (Doc. 27, Ex. "F").

## II.   PROCEDURAL HISTORY

As noted above, on September 30, 2014, Mr. Wayne filed a Complaint (Doc. 1) against Defendants Kamionka Entertainment Group and Mulligan's, premised on the above-described facts.  Therein, Mr. Wayne asserts claims of racial discrimination, racial harassment, and retaliation in violation of 42 U.S.C. § 1981. Mr. Wayne seeks an order from this Court permanently enjoining Defendants from discriminating or retaliating against himself or anyone else on any basis forbidden by § 1981.  Mr. Wayne also seeks damages in the form of compensation and reimbursement for any and all pay and benefits he would have received had he not been subjected to Defendants' illegal actions, including front pay and back pay. Finally, Mr. Wayne seeks actual and punitive damages, as well as damages for

pain, suffering, and humiliation caused by Defendants' actions, and reimbursement for the costs and expenses of this action and reasonable attorneys' fees.

Subsequent to the filing of the Complaint, this case was referred to mediation.  On April 13, 2015, the Court was informed that a settlement had not been reached.  (Doc. 23).  On October 1, 2015, Defendants filed the instant Motion for Summary Judgment.  (Doc. 24).  The Motion has been fully briefed (Docs. 26, 28, and 29) and is thus ripe for our review.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law.  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial.  *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## IV.   ANALYSIS

Defendants proffer a variety of arguments in support of their Motion for Summary Judgment.  First, they argue that Kamionka Entertainment Group is an

improper defendant in this matter, as Mr. Wayne was never employed by

Kamionka Entertainment Group.  Second, Defendants argue that Mr. Wayne has

failed to establish the prima facie elements of racial discrimination, harassment,

and retaliation.  Third, Defendants argue that even if this Court finds that Mr.

Wayne has established a prima facie case of racial discrimination, Defendants have

adequately demonstrated that there were non-discriminatory reasons for the actions

taken against Mr. Wayne that were not pretextual.  We consider each argument in

turn below.

### A.   Whether Kamionka Entertainment Group is a properly named defendant

Workplace discrimination claims brought under 42 U.S.C. § 1981 are

analyzed through the same framework as discrimination claims brought pursuant to

Title VII.  *See Holtzman v. The World Book Co*., 174 F.Supp.2d 251, 258 (E.D.Pa.

2001) (citing *Stewart v. Rutgers, The State Univ*., 120 F.3d 426, 432 (3d Cir. 1997)

("[P]laintiff's § 1981 claim for workplace discrimination is analyzed under the

same framework as Title VII.")).  "In order to state a Title VII claim, [a plaintiff]

must allege an employment relationship with the defendants."  *Covington v. Int'l*

*Ass'n of Approved Basketball*, 710 F.3d 114, 119 (3d Cir. 2013).  The Third Circuit

has instructed that an analysis of an employment relationship should appropriately

focus on the level of control an alleged employer exerted over the plaintiff as

stated by the Darden test.  *Id*.; *Plaso v. IJKG, LLC*, 553 Fed.Appx. 199, 203-04 (3d

Cir. 2014) ("The essence of the Darden test is whether the hiring party has the 'right to control the manner and means by which the product is accomplished.'" (quoting *Nationwide Mutual Insurance v. Darden*, 503 U.S. 318, 323-24 (1992))).

In performing a Darden analysis, a district court should consider "which entity paid [the employees'] salaries, hired and fired them, and had control over their daily employment activities." *Id.* The burden for establishing an employment relationship for the purposes of Title VII claims falls upon the plaintiff. *Holtzman*, 174 F.Supp.2d at 254 (citing *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 35 (3d Cir. 1983)).

Defendants argue that Kamionka Entertainment Group had absolutely no control over Mr. Wayne, nor any relationship or association at all with Mulligan's Pub. (Doc. 26, pp. 7-8). As such, Defendants assert that Kamionka Entertainment Group is improperly named as a defendant before this Court. Mr. Wayne completely fails to address this argument in his Brief in Opposition to Defendants' Motion for Summary Judgment. (*See generally*, Doc. 28). However, as noted above, Mr. Wayne submits two exhibits that seem to show some form of a relationship between Kamionka Entertainment Group and Mr. Paine and Mr. Wayne, both employees of Mulligan's. These are: first, a form labeled "Workers' Compensation Information," in which Mr. Paine has written "Kamionka Entertainment Group" in a space for the name of his employer (Doc. 28-5, Ex.

"E"); and second, a form entitled "Request for Criminal Record Check" in which Kamionka Entertainment Group appears to be requesting that a background check be performed on Mr. Wayne.  (Doc. 28-5, Ex. "F").  Mr. Kamionka speculates that the "Request for Criminal Record Check" was improperly taken from his desk and placed in Mr. Wayne's new hire folder, as Mr. Kamionka has a number of such forms in his office with different names due to the multiple businesses he conducts.

"Whether a worker is an "employee" is a question of law to be determined by the court in the absence of disputed material underlying facts." *Holtzman*, 174 F.Supp.2d at 254 (citing *Cox v. Master Lock Co.*, 815 F.Supp. 844, 845 (E.D.Pa. 1993) *aff'd* 14 F.3d 46 (3d Cir. 1993)).  While the parties dispute the legal conclusions to be drawn from the factual evidence they have submitted, they offer no contradictory factual evidence.  Thus, there is no dispute of material fact here and any conclusions drawn are solely determinations of law.

As noted above, at the summary judgment stage a court should view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences therefrom.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  Even given this generous vantage point, however, Mr. Wayne's evidence merely indicates that Kamionka Entertainment Group sought Mr. Wayne's consent to perform a criminal background check in connection with

his employment.  Importantly, the forms do not prove or even suggest that Kamionka Entertainment Group had any element of control over the daily employment activities of Mr. Wayne at Mulligan's.  Nor did Kamionka Entertainment Group issue Mr. Wayne's paychecks, or assert any regular control over Mr. Paine, Mr. Wayne's manager.  Mr. Wayne has not submitted any further evidence beyond these two forms that would bolster his assertion that he worked for, or had any employment relationship with, Kamionka Entertainment Group whatsoever.[1]  Again, Mr. Wayne also has not addressed this issue in his briefing. In contrast, Defendants have submitted other forms, including Mr. Wayne's "New Hire Card," indicating that Mr. Wayne's place of employment was Mulligan's Pub. (Doc. 27, p. 63).

We find it telling that Mr. Wayne was not engaged in the type of business that Kamionka Entertainment Group pursues.  Kamionka Entertainment Group is an entertainment consulting firm, while Mr. Wayne is a bartender.  (*See id.*; Doc. 27, p. 65 (Mr. Wayne's I-9 Employment Verification Form, indicating that Mr. Wayne was employed as a bartender)).  Thus, it is far likely that Mulligan's, as a pub, was the entity in charge of Mr. Wayne's work and oversight.  *Holtzman*, 174 F.Supp.2d at 254 (listing "whether the work [performed by the plaintiff] is part of

---

[1]      In his Complaint, Mr. Wayne alleges that Mulligan's is the wholly owned subsidiary of Kamionka Entertainment Group.  (Doc. 1, ¶ 10).  However, Kamionka Entertainment Group has denied this allegation and there has been no further evidence proffered showing that Kamionka Entertainment Group has any ownership interest at all in Mulligan's. Mr. Wayne has not reasserted this allegation in any of his subsequent submissions.

the regular business of the hiring party" as a factor for considering whether an employment relationship exists).  Finally, Mr. Wayne admits that he was both hired and fired by Mr. Paine in Mr. Paine's capacity as general manager of Mulligan's.  (Doc. 1, ¶¶ 16-19).

Given the foregoing analysis, we conclude that Mr. Wayne's evidence does not constitute a sufficient basis for a reasonable jury to find that Mr. Wayne was engaged in an employment relationship with Kamionka Entertainment Group.  Mr. Wayne has had every opportunity to discover commensurate facts in support of his contention that Kamionka Entertainment Group was his employer.  He has failed to do so.  We shall therefore grant Defendants' Motion for Summary Judgment with respect to all claims against Kamionka Entertainment Group.

**B.     Whether Mr. Wayne's substantive claims may survive summary judgment**

As noted above, Mr. Wayne brings claims of racial discrimination, racial harassment, and retaliation under § 1981.  (*See generally*, Doc. 1).  Defendants argue that Mr. Wayne has failed to establish the prima facie elements of each claim.  Further, Defendants argue that Mulligan's successfully articulated a legitimate, non-discriminatory reason for firing Mr. Wayne and that Mr. Wayne has failed to meet his burden of showing that Mulligan's reason was a mere pretext for racial discrimination.  Finally, Defendants also argue that the entirety of Mr. Wayne's claims are premised on hearsay not within any exception, and that Mr.

Wayne's hearsay evidence is therefore inadmissible.  Before turning to the substantive arguments proposed by Defendants, we consider the admissibility of Mr. Wayne's evidence.

### 1.    Hearsay Analysis

Mr. Wayne's claims rely predominantly upon the myriad racially charged statements he claims Mr. Kamionka made to show an inference of racial discrimination.  Mr. Wayne also relies upon a note written by Mulligan's manager, Mr. Paine, following Mr. Wayne's firing (the "Paine Note").  The Paine Note reads: "1:09 am 7/21/2014.  Ron Kamionka had me fire Francisco Wayne for zero reason.  Said the only time he wants a black or hispanic working for him is if they are in the kitchen or security."   (Doc. 28, p. 2).  On the right hand margin, the letters "JP" are encircled.  We first consider the admissibility of the Paine Note.

Federal Rule of Evidence 801 defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801.  However, there also exists a non-hearsay definition for a statement made by a party's agent or employee within the scope of an employment relationship.  We agree with Mr. Wayne that the Note is correctly categorized as non-hearsay, because it is offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship."  FED.

R. Evid. 801(d)(2)(D).  Indeed, Defendants appear to agree with this characterization of the Paine Note as non-hearsay.  Rather, Defendants argue that the content of the note contains "double hearsay," insofar as Mr. Paine's statement describes what Mr. Kamionka said. We agree with Defendants' characterization of the second line of the Paine Note as double hearsay.  The second sentence states: "Said the only time he [Mr. Kamionka] wants a black or hispanic working for him is if they are in the kitchen or security."  (Doc. 28-5, p. 64).  This statement, contained within the otherwise admissible note, describes what Mr. Kamionka supposedly said.  Therefore, as double hearsay, it requires a separate analysis.[2]

Mr. Wayne argues that "Manager Paine wrote the Note to let Mr. Wayne know his opinion that Owner Kamionka forced him to fire Mr. Wayne because Mr. Wayne is African American (which opinion was derived directly from Owner Kamionka's mouth)."  (Doc. 28, p. 7).  We disagree with this characterization of the Paine Note.  The note does *not* express an opinion that Mr. Paine claims as his

---

[2]     We base this determination predominantly on the Third Circuit's discussion of double hearsay in *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1216 (3d Cir. 1995).  In *Abrams*, the court discussed an out-of-court statement made by a supervisor authorized to speak with subordinates about the employer's employment practices.  *Id.*  The court "perceive[d] no double hearsay problem because we do not think the supervisor's explanation, *if offered through the testimony of the supervisor*, would be subject to a hearsay objection."  *Id.* (emphasis added due to its relevance to our analysis below).

The Court of Appeals contrasted the testimony of the supervisor with testimony presented in *Carden v. Westinghouse Electric Corp.*, 850 F.2d 996 (3d Cir. 1988), which indeed established a double hearsay dilemma, where "[t]he plaintiff had been told by his supervisor, in the context of not being promoted . . . , that the supervisor "thought they wanted a younger person."  *Abrams*, 50 F.3d at 1216.  Because the speaker described another's statement, the court found that the testimony involved double hearsay.  We find that in the instant case, too, the supervisor described another's statement, thus causing the same problem of double hearsay.

own. Rather, it relates a statement that Mr. Kamionka allegedly made. This constitutes hearsay not within any exception to the rule. As described by the Third Circuit in *Abrams*, in order for that statement to be admitted, Mr. Paine would have to utilize the 801(d)(2)(D) non-hearsay definition to *testify in court* that he overheard Mr. Kamionka make that statement; the Note cannot constitute testimony on Mr. Paine's behalf. *Abrams*, 50 F.3d at 1216; *see Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 297 (3d Cir. 2007) (admitting testimony by an employee concerning statements made by his immediate supervisor within the scope of that supervisor's employment).

Unfortunately for Mr. Wayne, Mr. Paine denies ever hearing such a statement from Mr. Kamionka. Rather, Mr. Paine states that he went to dinner with Mr. Wayne the day after the alleged theft took place to communicate that Mr. Wayne would not be scheduled for any additional shifts at Mulligan's (in essence, that Mr. Wayne was being terminated). It was at that time, according to Mr. Paine, that Mr. Wayne asked Mr. Paine to write the Note. (Doc. 28-5, pp. 111-14, 46:3-49:3). Also at that time, Mr. Wayne informed Mr. Paine of the quote, though Mr. Paine's testimony is unclear as to whether Mr. Wayne specifically dictated the content of the note to him, or whether Mr. Wayne merely relayed what Mr. Kamionka supposedly said. Mr. Paine further explained that Mr. Wayne had told

him the statement was overheard by a cook at Mulligan's, Nathan Lewis ("Mr. Lewis").  (Doc. 27, pp. 220-23, 47:22-50:16).

At the time, Mr. Paine says, he agreed to write the note due to his romantic attraction to Mr. Wayne.  Now, however, Mr. Paine refuses to testify to the accuracy of the contents of the Note and instead says that he never heard Mr. Kamionka make such a remark.

Because of the foregoing, the "hearsay within hearsay" that the second sentence of the Paine Note contains is unable to be corroborated by outside testimony.  As noted above, such testimony would have been admissible under Federal Rule of Evidence 801(d)(2)(D), but without it, we cannot admit the sentence into evidence as proof of the matter asserted in the statement.[3]  Rather, only the first sentence of the Note, stating "1:09 am 7/21/2014.  Ron Kamionka had me fire Francisco Wayne for zero reason" is admissible, because it is Mr. Paine's opinion and thus non-hearsay made by Mr. Kamionka's employee on a matter within the scope of that employment relationship.  *Abrams*, 50 F.3d at 1216 ("Where a supervisor is authorized to speak with subordinates about the employer's employment practices, a subordinate's account of an explanation of the supervisor's

---

[3]     We make no judgment on whether the second sentence of the Note might have been admissible in order to challenge the credibility of Mr. Paine or for impeachment purposes.  This argument has not been presented by the parties, and indeed it would have been premature for them to do so without further knowledge of whether Mr. Wayne's claims would even survive the summary judgment stage.

understanding regarding the criteria utilized by management in making decisions on hiring, firing, compensation, and the like is admissible against the employer.").

We turn now to the assortment of racist remarks that Mr. Wayne claims Mr. Kamionka made.  As noted above, these include: (1) Mr. Kamionka openly using the term "nigger" when referring to African American employees; (2) Mr. Kamionka not wanting "any niggers touching the money, because it's in their blood to steal"; and (3) Mr. Kamionka stating that "the day minorities rise up and have equal rights is the day I leave this country."  (Doc. 1, ¶¶ 23-24).

Notably, Mr. Wayne admits that he never heard Mr. Kamionka make these, or any other racially offensive statements himself.  (Doc 28-5, p. 42, 39:13-15; Doc. 28-5, p. 49, 46:18-24).  Rather, at his deposition Mr. Wayne testified that multiple employees relayed Mr. Kamionka's statements to him nearly every day during the course of his employment at Mulligan's.  Mr. Wayne specifically states that that another bartender, Ms. Katie Cora, conveyed Mr. Kamionka's statement that "the day minorities have equal rights in this country is the day [Mr. Kamionka] will leave." (*Id.*, pp. 42-43, 39:16-40:7).

Again, without further corroborating testimony, these statements amount to nothing more than whisper-down-the-lane, with Mr. Wayne testifying that another individual told him what Mr. Kamionka had allegedly said.  As in our analysis

above, an employee who actually overheard these remarks would be able to testify to them under 801(d)(2)(D).

Significantly, however, *not a single employee* has provided testimony corroborating Mr. Wayne's assertions.  Mr. Lewis, the cook who Mr. Paine claims Mr. Wayne credited with overhearing the remark detailed in the Paine Note, testifies that he never heard Mr. Kamionka make the remark described, nor did Mr. Lewis ever feel that Mr. Kamionka was "biased against black people."  (Doc. 27, p. 279, 13:8-18).

Mr. Wayne's own testimony regarding these remarks constitutes inadmissible hearsay without any applicable exception, and because of the complete absence of evidence supporting Mr. Wayne's claims that Mr. Kamionka made racist statements, there is no other way for the statements to be admitted into evidence. As such, Mr. Wayne's assertions about the statements are inadmissible and must be disregarded.  The only admissible evidence is the visible agitation that Mr. Wayne alleges he witnessed when Mr. Kamionka learned that Mr. Wayne was hired, and the first sentence of the Paine Note.

Having fully addressed the hearsay arguments presented by the parties, we turn now to the substantive arguments Defendants pose against Mr. Wayne's claims.  Because different elements make up each claim, we consider the claims separately below.

### i.      Racial Discrimination

Mr. Wayne argues that his racial discrimination claim should survive

summary judgment under both a mixed-motive analysis and a traditional pretext

analysis.  *See Mehta v. Fairleigh Dickinson Univ.*, 530 Fed. Appx. 191, 194-96 (3d

Cir. 2013) (considering claims of gender and race discrimination under both

analyses).  We consider each analysis in turn.

### 1.      Pretext Analysis – McDonnell Douglas Framework

A pretext analysis is properly conducted through the McDonnell Douglas

framework, laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 802 (1973).  *Houston v. Dialysis Clinic, Inc.*, Civ. Action No. 13-

4461 (FLW), 2015 WL 3935104, at *4 (D.N.J. June 26, 2015) ("Discrimination

claims brought under § 1981 . . . are analyzed according to the burden-shifting

framework set forth by the Supreme Court in *McDonnell Douglas Corp. v.

Green*") (citing *Davis v. City of Newark*, 285 Fed.Appx. 899, 903 (3d Cir. 2010)).

The McDonnell Douglas framework was set forth in detail by the Third Circuit in

*Jones v. School District of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999).  It

proceeds in three stages.

> First, the plaintiff must establish a prima facie case of discrimination.  If the
> plaintiff succeeds in establishing a prima facie case, the burden shifts to the
> defendant to articulate some legitimate, nondiscriminatory reason for the
> employee's rejection.  Finally, should the defendant carry this burden, the
> plaintiff must then have an opportunity to prove by a preponderance of the
> evidence that the legitimate reasons offered by the defendant were not its

true reasons, but were a pretext for discrimination.  While the burden of production may shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.  Our experience is that most cases turn on the third stage, *i.e.*, can the plaintiff establish pretext.

*Jones*, 198 F.3d at 410 (internal citations and quotations omitted) (citing

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of*

*Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

In order to establish the prima facie elements of a claim for race

discrimination, "a plaintiff must illustrate that: (1) he is a member of a protected

class; (2) he was qualified for the position he held; (3) he suffered an adverse

employment action; and (4) the circumstances of the adverse employment action

give rise to an inference of discrimination.  *Johnson v. Keebler-Sunshine Biscuits,*

*Inc.*, 214 Fed. Appx. 239, 241 (3d Cir. 2007).  "[T]he elements of a prima facie

case depend on the facts of the particular case.  Thus, a prima facie case cannot be

established on a one-size-fits-all basis."  *Jones*, 198 F.3d at 411.

Here, Defendants argue that Mr. Wayne's claim must fail because "there is a

complete lack of evidence to support any contention that [Mr. Wayne] was treated

differently at Mulligan's because of his race."  (Doc. 26, p. 11).  Evidence that Mr.

Wayne was treated differently because of his race would support the fourth

element of a claim for race discrimination, requiring an inference of

discrimination.  Thus, though Defendants fail to specifically state that this is the

element of the claim they are challenging, we presume as much from the content of their argument.

Courts no longer require a plaintiff to show that he or she was replaced by someone outside of the protected class in order to establish an inference of discrimination. *Johnson*, 214 Fed.Appx. at 242 (citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 347 (3d Cir. 1999)). Rather, "an inference of discrimination could be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by supervisors suggesting racial animus." *Houston*, 2015 WL 3935104, at *4 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)); *Johnson*, 214 Fed.Appx. at 242 ("[A] plaintiff establishes the fourth element of a prima facie cause if he was . . . treated differently than similarly-situated, non-protected employees."). "With specific respect to element four, the plaintiff must establish a nexus between his falling within the protected class and his adverse employment decision." *Sewell v. Hertrich Invs., LTD*, 825 F.Supp.2d 503, 511 (D.Delaware 2011) (citing *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008)). A "subjective belief that race played a part in [the adverse employment decision] is insufficient." *Tucker v. Thomas Jefferson Univ.*, 484 Fed.Appx. 710, 712 (3d Cir. 2012).

Mr. Wayne has not submitted evidence that he was replaced in his bartending position by someone outside of the protected class.[4]  Instead, Mr. Wayne argues that direct evidence of discrimination against him exists, derived from statements or actions by Mr. Kamionka that suggest his racial animus.  (Doc. 28, pp. 11-12).  Mr. Wayne also argues that "there were no other African American bartenders working for Owner Kamionka and therefore non-African Americans were treated more favorably than Mr. Wayne."  (*Id.*, n. 2).[5]

Mr. Wayne's statement regarding the lack of other African American bartenders working for Mr. Kamionka misunderstands the requirements of comparator evidence.  "In order to raise an inference of discrimination based on comparator evidence, a plaintiff must demonstrate that: (1) the acts of the similarly situated employees were of a "comparable seriousness" and (2) the employment decision must have been made by the same supervisors.  *Houston*, 2015 WL 3935104, at *5 (internal quotations and citations omitted) (citing *Taylor v. Procter & Gamble* 184 F.Supp.2d 402, 410 aff'd 53 Fed. Appx. 649 (3d Cir. 2002)).

---

[4]   Mr. Wayne's brief is silent on the point of whether Mr. Wayne was replaced at all.  While Mr. Wayne argues that "Owner Kamionka . . . could not identify a single African American bartender who worked at any of his [four] bars," we cannot infer from this statement that Mr. Wayne was replaced by an individual of a non-minority race.  (Doc. 28, p. 12).  Furthermore, this statement is disputed by Defendants and lacks an evidentiary basis.

[5]   This statement is directly contradicted by testimony given during Mr. Kamionka's deposition, in which Mr. Kamionka indicates that a female African American bartender had worked for him at another bar he owned and also at Mulligan's for several years, until the winter of 2015 when she resigned.  (Doc. 28-5, pp.158-60, 20:22-22:21).  Mr. Kamionka's testimony is supported by that of Mr. Paine and Mr. Lewis, both of whom describe black and Hispanic employees at a variety of Mr. Kamionka's establishments and in a variety of positions (though neither testify to the existence of the specific bartender described by Mr. Kamionka).

However, neither party offers the Court evidence of a detailed example of an instance where another, non-protected employee at any other of Mr. Kamionka's bars was suspected of, or caught stealing.[6]  Importantly, the necessary demonstration must be proffered by the plaintiff, and here Mr. Wayne has cited no instance where a similarly situated employee of a non-protected class was treated more favorably than he after having been accused of stealing.  Thus, Mr. Wayne is unable to meet his burden of establishing the fourth element of a claim of race discrimination through comparator evidence.  Merely stating that no other African American bartenders work for Mr. Kamionka without providing additional detail is insufficient evidence to show that non-African American bartenders were treated "more favorably."

In support of their claim that Mr. Wayne has not established a prima facie case through comparator evidence, Defendants argue that any individual whom Mr. Kamionka accused of stealing from Mulligan's would be immediately terminated, just as Mr. Wayne was.  Thus, the decision to fire Mr. Wayne cannot amount to disparate treatment on the basis of race.  We are compelled to point out that Defendants' characterization of the policy at Mulligan's is not entirely correct.

---

[6]     Mr. Paine testified that "[t]here's people accused of stealing every day" (Doc. 28-5, p. 128, 63:3-4); however he was unable to remember the name of a single individual accused of stealing cash and was unable to relate a single incident in detail.  He testified that individuals accused of stealing cash were fired, but that he personally had never fired any such individual, and that no one ever stole cash at the location that he managed.  (Doc. 28-5, pp. 128-29, 63:7-64:12).

Rather, in his deposition testimony, Mr. Kamionka offers a general explanation that only where he was "100 percent sure of the act" would he fire someone for theft, and there were many times where, being unsure of whether an employee was stealing, that employee was not fired.[7]  (Doc. 28-5, pp. 187-88, 49:15-50:19; Doc. 27, p. 123, 51:6-24).  In this particular instance, however, Mr. Kamionka testified that he was sure that he had seen Mr. Wayne place cash in his front pocket, and that Mr. Wayne's later explanation that it was in fact a bottle-opener that he had placed in that pocket did not ring true to Mr. Kamionka, given his experience with bartenders' habits.  Because of these observations, Mr. Kamionka was reasonably certain that Mr. Wayne had stolen from the bar, such that he was comfortable firing Mr. Wayne.  Thus, even if Mr. Wayne had argued that he was treated more severely than his similarly-situated employee counterparts (which he has not), Defendants submit that Mr. Wayne had not been subjected to unduly harsh treatment as is necessary to establish a prima facie claim through comparator evidence.

Instead of relying on comparator evidence, Mr. Wayne predominantly argues that direct evidence of discriminatory animus exists.  In support of his allegation, Mr. Wayne relies upon the evidence discussed above, Section IV.B.1,

---

[7]     Defendants flagrantly misrepresent this testimony in their briefing where they state that the testimony of Mr. Kamionka supports the contention that "every employee who was accused of stealing cash during his tenure at Mulligan's was terminated."  (Doc. 26, p. 11).  Mr. Kamionka does not make such a statement at all and in fact declares quite the opposite.

of which only the first sentence of the Paine Note and Mr. Kamionka's apparent

discomfort upon learning that Mr. Wayne had been hired as a bartender are

admissible.  Mr. Wayne also testified that Mr. Kamionka refused to drink a Diet

Coke Mr. Wayne brought to him, and that he was not stealing from Mulligan's.

This testimony too, is admissible; however, as previously discussed, the bulk of

Mr. Wayne's proffered evidence that would indicate a racially discriminatory

animus constitutes inadmissible hearsay.  It follows that Mr. Wayne's prima facie

case is significantly weakened.  Indeed, for the following reasons we find that Mr.

Wayne is unable to make out a prima facie case of race discrimination.

Furthermore, even if he were able to establish a prima facie case, Mr. Wayne is

unable to show that his alleged thievery was a mere pretext for a racially motivated

termination under the burden shifting framework detailed above.

The admissible evidence that the parties submit does not contain any

reference to race, but for Mr. Wayne's own stated belief that Mr. Kamionka did not

want him working at Mulligan's because of his race.  The Third Circuit has

repeatedly held that mere "subjective belief that race played a role in [adverse]

employment decisions . . . is not sufficient to establish an inference of

discrimination."  *Groeber v. Friedman and Schuman, P.C*., 555 Fed.Appx. 133,

135 (3d Cir. 2014) ("Groeber failed to put forth facts to support the fourth element

above. . . .  Without proof that someone similarly situated was treated more

favorably, Groeber is left only with her subjective belief that race played a role in . . . employment decisions."); *Tucker*, 484 Fed.Appx. at 712.

As in *Groeber*, here too Mr. Wayne cannot point to anything more than his subjective belief that race was involved in his termination.  Indeed, nothing in the admissible evidence indicates that Mr. Kamionka was motivated by discriminatory animus or touches upon race at all, let alone shows by a preponderance of the evidence that a nexus exists between Mr. Wayne's race and his termination.  The Paine Note is the strongest evidence against Mr. Kamionka's decision, and it merely indicates Mr. Paine's belief that Mr. Kamionka lacked sufficient cause to fire Mr. Wayne.  This could cause a jury to conclude that Mr. Kamionka's decision to fire Mr. Wayne for theft was wrong or mistaken—but, as discussed further below, such a conclusion is not sufficient grounds upon which to find an inference of discriminatory intent as is necessary for a claim of racial discrimination to survive.  We therefore cannot find that Mr. Wayne has met his burden to establish a prima facie claim.

Though we find that Mr. Wayne failed to make out a prima facie cause of action, for the sake of completeness we nonetheless move to the next step of the McDonnell Douglas framework.  We do this in an abundance of caution, and to show that even if Mr. Wayne had been able to make out a prima facie claim of racial discrimination, his claim nonetheless fails because he is unable to present a

shred of evidence beyond his own beliefs in order to show that the legitimate reason presented for his termination was merely a pretext.

In the second step of the McDonnell Douglas analysis, Defendants are required to articulate a legitimate, non-discriminatory reason for terminating Mr. Wayne. This, clearly, they have done. Defendants assert that theft, and not discriminatory animus, motivated Mr. Kamionka's decision to fire Mr. Wayne. Defendants support this assertion with Mr. Kamionka's deposition testimony, and Mr. Paine's corroborating testimony. Thus, the second step of the framework requiring a reason for terminating Mr. Wayne has been satisfied.

The final step of this analysis affords Mr. Wayne "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Jones*, 198 F.3d at 410. As noted above, the Third Circuit has found that most cases turn on this third step. *Id*.

> To establish pretext under the summary judgment standard, a plaintiff must either (1) offer evidence that 'casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication,' or (2) present evidence sufficient to support an inference that "discrimination was more likely than not a motivating or determinative cause of the adverse employment action.' *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994). To meet that burden, a plaintiff 'cannot simply show that the employer's decision was wrong, or mistaken.' *Id*. at 765.

*Hanzer v. Mentor Network*, 610 Fed.Appx. 121, 124-25 (3d Cir. 2015).

As we have previously summarized, Mr. Wayne may present the first sentence of the Paine Note, along with his own testimony that he believes his race was the motivating factor in Mr. Kamionka's accusations of theft against him.  Mr. Wayne may also seek to testify to Mr. Kamionka's allegedly shocked and uncomfortable expression when he met Mr. Wayne and was informed that Mr. Wayne had been hired as a bartender at Mulligan's.[8]  Finally, Mr. Wayne may testify to Mr. Kamionka's subsequent refusal to allow Mr. Wayne to serve him a Diet Coke.  (Doc. 28, p. 11).

We cannot find that this circumstantial and flimsy evidence is enough to cause a reasonable jury to conclude that Mr. Kamionka's allegations of theft were a pretext for racial discrimination.  As noted above in our discussion of Mr. Wayne's insubstantial prima facie case, nothing in the evidence amassed indicates that Mr. Kamionka was motivated by discriminatory animus.  Race is not an apparent factor anywhere in this evidence at all, except in regards to Mr. Wayne's own beliefs.  As noted, the Paine Note is the strongest evidence against Mr. Kamionka's decision, and it merely indicates that, in Mr. Paine's opinion, Mr. Kamionka lacked cause to fire Mr. Wayne.  This evidence could cause a jury to

---

[8]     Mr. Kamionka attributes this percieved reaction to his surprise and disappointment that his newly promoted manager, Mr. Paine, had disobeyed Mr. Kamionka's express instruction not to hire anyone new without Mr. Kamionka's approval first.  Mr. Kamionka testified that this instruction was standard for new managers, until he felt confident in their judgment such that they could hire staff independently and without Mr. Kamionka's supervision.  This proffered reason for any negative reaction on the part of Mr. Kamionka is corroborated by Mr. Paine's testimony that Mr. Wayne was indeed Mr. Paine's first hire as manager of Mulligan's.

conclude that Mr. Kamionka's decision to fire Mr. Wayne for theft was wrong or mistake—but, again, mistake is not sufficient grounds upon which to find a pretext for racial discrimination.

The remaining evidence consists of Mr. Wayne's testimony regarding Mr. Kamionka's actions, and like the Paine Note, it is not sufficient to show implausibility in Mr. Kamionka's clearly stated belief that he was sufficiently certain that Mr. Wayne had engaged in theft.  A negative look, or a refusal to drink a soft beverage, simply cannot amount to sufficient evidence for a reasonable jury to find that racial discrimination was in play in Mr. Wayne's termination.  No matter which way Mr. Wayne tries to turn this evidence, there is simply not enough there to indicate anything more than Mr. Kamionka's vague dislike of Mr. Wayne, if even that may be inferred.

Without an iota of evidence to support Mr. Wayne's allegation, we reiterate that a reasonable jury could not conclude that Mr. Kamionka's decision to terminate Mr. Wayne was motivated by anything other than a belief, rightly or wrongly held, that Mr. Wayne was engaged in theft at Mulligan's.  *See Hanzer*, 610 Fed.Appx. at 125 (concluding that without additional evidence, the plaintiff had not established weakness in her employer's decision to terminate her).  Thus, Mr. Wayne has not established a claim of racial discrimination under the McDonnell Douglas framework.

### 2.    Mixed-Motive Analysis – Price Waterhouse Framework

Mr. Wayne also argues that his racial discrimination claim should survive summary judgment under a mixed-motive analysis.  The mixed-motive analysis has been set forth by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277-79 (1989) (O'Connor, J., concurring), and discussed most recently by the Third Circuit in *Church v. Sears Holding Corp.*, 605 Fed. Appx. 119, 123 (3d Cir. 2015) (applying the Price Waterhouse framework to a disability discrimination claim). There, our Court of Appeals explained that

> Under Price Waterhouse, if a plaintiff "produces evidence that an employer placed a substantial reliance on a proscribed discriminatory factor in making its decision to take the adverse employment action, the burden of persuasion shifts to the employer to prove that even if it had not considered the proscribed factor, the employment action would have occurred."  The burden shifts to the employer only if the plaintiff presents "direct evidence" of the employer's discriminatory purpose.  Direct evidence is evidence that is "sufficient to allow the jury to find that the decision makers placed a substantial negative reliance on the plaintiff's [disability] in reaching their decision.

*Church*, 605 Fed. Appx. at 123 (internal citations omitted).  Rather than considering claims of disability discrimination, we of course ask here whether Mr. Kamionka placed a substantial negative reliance on Mr. Wayne's race.

For all the reasons already explained, Mr. Wayne has not provided any evidence at all that Mr. Kamionka relied upon, or even considered Mr. Wayne's race in his decision to terminate Mr. Wayne.  Certainly, Mr. Wayne has not

produced the "direct evidence" that *Church* informs us is necessary to establish that Mr. Kamionka acted under mixed-motives as is required here.  If Mr. Wayne could provide a single witness to corroborate his testimony, our analysis might well reach a different conclusion.  However, this Mr. Wayne cannot do.  With nothing more than Mr. Wayne's testimony and the Paine Note which makes no reference to discriminatory animus, we cannot find that direct evidence exists as is necessary to support a mixed-motive analysis.  As such, summary judgment is granted to the Defendants in regard to Mr. Wayne's racial discrimination claim.

### ii.  Harassment

We turn now to Mr. Wayne's claim of workplace harassment.[9]  In order to establish the existence of an actionable hostile work environment, the Third Circuit has articulated five factors that a plaintiff must prove.  These are: "(1) that she suffered intentional discrimination because of her race; (2) that the discrimination was severe and pervasive; (3) that the discrimination detrimentally affected her; (4) that the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of *respondeat superior* liability."  *Davis*, 285 Fed.Appx at 902.

Defendants argue that Mr. Wayne has failed to establish the second element, that the discrimination was severe and pervasive.  Courts

---

[9]  Though Mr. Wayne complains of racial harassment, it appears that in reality he intended to plead the elements of a hostile work environment.  (Doc. 1, ¶¶ 38-42).

must consider the totality of the circumstances when determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990). Factors we must look at include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Id*. (citing *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367 (1993). "In evaluating a hostile work environment claim . . . we are mindful that 'offhanded comments, and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." *Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 778, 118 S.Ct. 2275 (1998)).

In *Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005),[10] the Third Circuit considered the claims of an African American police officer. The court emphasized that "no racist comment, written or spoken, was ever directed at Davis himself. . . . Davis cannot meet the first element of the hostile work environment claim [causation] . . . solely by pointing to comments that were directed at other individuals." *Caver*, 420 F.3d at 263. The court went on to hold that the comments could be considered when deciding whether facially neutral conduct was actually racially motivated. *Id*. at 263-64 (ultimately concluding that because

---

[10]   In *Caver*, the Third Circuit described the second element of a hostile work environment claim as discrimination that was "pervasive and regular." However, this language was updated to reflect Supreme Court precedent by the Third Circuit in *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006), and we use the updated language that the discrimination was "severe and persuasive" here.

the jury had failed to find the city liable for race-based retaliation, "reversing the District Court's decision and remanding . . . would make little sense.").

Here, Mr. Wayne admits that he never overheard a racist comment, nor was a racist comment ever directed at him during his time at Mulligan's.  (Doc. 28-5, pp. 42-43, 39:13-15, 40:4-7).  Even if Mr. Wayne could present evidence that other employees at Mulligan's had related Mr. Kamionka's comments to him (which he cannot), their retellings would not amount to "severe and pervasive" discrimination under the standard articulated by *Caver*, as the retellings were not directed at Mr. Wayne in a hostile way.  Further, if Mr. Wayne argued that the comments could nonetheless be used to infer that the racially neutral conduct that Mr. Kamionka engaged in was nonetheless hostile (which Mr. Wayne has not), the only facially neutral negative conduct that Mr. Wayne can attest to is Mr. Kamionka's refusal to drink a Diet Coke that Mr. Wayne brought to him, and his refusal to accept Mr. Wayne's offer to serve him on another occasion.  These acts certainly do not amount to severe and pervasive conduct sufficient to amount to a racially hostile work environment – they do not even appear to be overtly hostile.  As such, we conclude that Mr. Wayne has failed to show by a preponderance of the evidence that he has established a hostile work environment claim, and we will grant summary judgment in favor of the Defendants in relation to this claim.

### iii.    Retaliation

Last, we consider Mr. Wayne's claims of impermissible retaliation under §
1981. "To establish a prima facie claim for retaliation under § 1981, the plaintiff
must prove three elements: (1) the employee engaged in a protected employee
activity; (2) the employer took an adverse employment action after or
contemporaneous with the employee's protected activity; and (3) a causal link
exists between the employee's protected activity and the employer's adverse
action." *Houston*, 2015 WL 3935104, at *10.

Mr. Wayne has admitted that, contrary to the factual allegations in the
Complaint, he never actually complained to Mr. Kamionka about the alleged racist
statements. (Doc. 28-5, pp. 44-45, 42:2-5). Rather, he informally complained to
other staff members at Mulligan's and the manager, Mr. Paine. (*Id.*; Doc.28-5, p.
57, 54:16-24). The parties agree that, after being accused of theft, Mr. Wayne
specifically complained to Mr. Paine that he believed he was being singled out due
to his race.

Defendants argue that these informal complaints do not amount to protected
activity, and that because Mr. Kamionka was unaware of them when he fired Mr.
Wayne, Mr. Wayne has failed to allege a causal link between the complaints and
Mr. Wayne's termination. (Doc. 26, pp. 20-22). Furthermore, Defendants argue,
even if Mr. Wayne has established a prima facie case of retaliation under the
McDonnell Douglas framework shifting analysis, he cannot carry his burden of

establishing that Defendants' articulated reason for terminating Mr. Wayne was a pretext.[11]

The parties are unable to direct us to Third Circuit case law on whether informal protests of discriminatory comments rise to the level of protected activity. Further, the parties do not agree on whether Mr. Paine informed Mr. Kamionka of Mr. Wayne's informal complaints before or after Mr. Kamionka made the decision to terminate Mr. Wayne.  However, we need not resolve either of these issues, because even if Mr. Wayne has successfully made out a prima facie claim of retaliation, we have already concluded that, due to the minimal evidence against Defendants, he is unable establish that Defendants' articulated reason for his termination was a pretext.  Once again, we emphasize that the first sentence of the Paine note at most indicates that Mr. Kamionka was mistaken in his suspicions that Mr. Wayne was stealing,[12] and that the negative looks and Mr. Kamionka's refusal to accept restaurant services from Mr. Wayne do not show by a preponderance of the evidence that Defendants' articulated reason for firing Mr. Wayne was implausible, fabricated, or in any way tied to his race whatsoever.  As such, we

---

[11]    As in claims of race discrimination, the McDonnell Douglas framework also applies in claims of retaliation. *Davis*, 285 Fed. Appx. at 904 (noting that once a plaintiff has established a prima facie case of retaliation, "the familiar McDonnell Douglas approach applies") (internal citations and quotations omitted).

[12]    As previously explained, the Third Cicuit has held that "a plaintiff 'cannot simply show that the employer's decision was wrong, or mistaken.'" *Hanzer v. Mentor Network*, 610 Fed.Appx. 121, 124-25 (3d Cir. 2015) (internal citations omitted).

conclude that Defendants' arguments are meritorious and we grant summary judgment in their favor.

## V.    CONCLUSION

For the foregoing reasons, we shall grant Defendants' Motion for Summary Judgment (Doc. 24) in its entirety.  A separate order shall issue in accordance with this ruling.